### G. W. FORD v. ISRAEL GREEN.

*Mortgagor and Mortgagee—Default in Mortgage—Right of Entry—Attornment of Mortgagor as Tenant of Mortgagee—Landlord's Lien, Priority of over Agricultural Lien of Third Party.*

After forfeiture, a mortgagee can, by contract, become landlord of the mortgagor so as to avail himself of the landlord's lien which, though such contract be oral and unregistered, has priority over the subsequent liens for supplies furnished by third parties who, by the registration of the mortgage, are fixed with notice of the mortgagor's default and the mortgagee's right of entry. (CLARK, J., dissents *arguendo* in which MONTGOMERY, J., concurs.)

CIVIL ACTION, heard before *Timberlake, J.,* (a jury trial being waived) at April Term, 1897, of FRANKLIN Superior Court. The facts appear in the opinion of the Court. From a judgment for B. W. Ballard Company intervenor, the plaintiff appealed.

*Mr. T. W. Bickett,* for plaintiff (appellant).
*Mr. F. S. Spruill,* for G. W. Ford, intervenor.

DOUGLAS, J.: This is an action originally brought before a Justice of the Peace to recover possession, by virtue of an agricultural lien, of certain crops raised during the year 1896 by the defendant Green on lands alleged by the plaintiff to have then belonged to said Green. The defendant, the Ballard Co., intervened and claimed title to the crops as the Landlord of the defendant Green. The plaintiff introduced his lien dated January 22, 1896, and filed for record January 24, 1896. The intervenor introduced his landlord's lien dated Feb. 26, 1896, and filed for registration May 25, 1896.

B. W. Ballard, on behalf of The Ballard Co., testified that the company "was the assignee and owner of a mortgage on said land, which mortgage was duly executed by Israel

Green and wife. This was expressly admitted. It was also admitted that the debt secured by the mortgage was unpaid. Ballard further testified that in 1893 the defendant Green, finding he could not pay the mortgage, agreed to become the tenant of the Ballard Co., surrendered the possession and remained on the land as such, paying an annual rental of $100; that at the same time said Company agreed with Green that if he would within one year pay the Company $1,000, which was less than the mortgage debt, then the Company would cancel the mortgage and all claim on the land; that defendant Green under this contract had remained on the land since 1892, recognizing the Ballard Company as his landlord and paying $100. a year rent, and that each year the Company had renewed its proposition to surrender all claims on the land on payment of the $1,000, and that every year since the above agreement in 1893 the Company had taken a crop lien for the said rent and advances."

It appears that Green still owes the plaintiff $48.95 on the debt secured by the crop lien, which it was admitted covered the crops in controversy. It was admitted that the value of the crops sought to be recovered was not over $50, and that Israel Green had an absolute deed to the land on which the crops were raised, and lived on the land. He corroborated B. W. Ballard as to the said agreement, and the plaintiff admitted the facts testified to, and also admitted that The Ballard Company had not been paid in full for advances made during 1896 to Green, and admitted that if the lien of the Company had priority over his lien, then judgment should be entered for the Company. Upon the whole evidence the court held that the Company was the landlord of Green, and that its lien had priority over the lien of the plaintiff, and rendered the judgment set out in the record, to which the plaintiff excepted and appealed.

We see no error in the ruling. Admitting that the agree-

ment testified to by Ballard did not change the relations of mortgagor and mortgagee existing between the Ballard Company and Green, and that the right of redemption still remained in Green, the possession of the land was changed by the entry of the Company and the attornment of Green. The Ballard Co. was thereafter, in any view of the case, at least the *mortgagee in possession* and therefore entitled to the rents and profits. That it rented the land to a tenant, who happened to be the mortgagor, did not change the character of that tenant's possession, which was thereafter that of his landlord. The entry of the mortgagee, being matter in *pais*, was incapable of registration. The agreement to rent might have been registered, but did not require registration, as it was only for one year, and renewed from year to year. As the mortgage held by the Ballard Company was "expressly admitted," it is to be presumed that all its necessary incidents, such as registration and default, were also admitted, as they are no where denied. This mortgage being registered was notice to the world, not only of its existence, but necessarily of all that it contained. Any one examining the record, and examination is presumed from the opportunity, would be fixed with notice that the mortgage was in default and that the consequent right of entry had accrued to the mortgagee. The actual entry of the mortgagee was not during the current year while the crops in question were growing, but was more than two years before they were planted or any of the supplies furnished therefor. This takes the case at bar clearly out of the rule laid down in *Killebrew* v. *Hines*, 104 N. C., 182, so strongly relied on by the plaintiff. That case, while maintaining the just principle that a mortgagee cannot enter and take possession of growing crops to the prejudice of pre-existing mortgagees or lienees, clearly recognizes the right of the mortgagee to enter upon condition broken, and this right is sustained by every

FORD *v.* GREEN.

authority cited therein.   The concurring opinion of Justice
Merrimon, reconciling *Killebrew* v. *Hines* with the earlier
cases, is worthy of attention.   The later cases of *Taylor* v.
*Taylor*, 112 N. C., 27, *Crinkley* v. *Egerton,* 113 N. C., 444
and *Jones* v. *Jones,* 117 N. C., 254, do not affect the princi-
ple now under consideration.   Can there be any question of
a mortgagee's right of entry upon breach of condition?   He
had it at common law.   1 Pingrey on Mortgages, Sec. 886.
He has it now in all States where the legal title is held to
vest in the mortgagee.   Ibid, Sec. 826; 2 Jones Mortgage,
Sec. 1253; *Killebrew* v. *Hines, supra,* and cases therein cited.

In *Jones* v. *Jones, supra,* this court has expressly held that,
after forfeiture, the mortgagee or vendor can by contract
become landlord of the mortgagor or vendee, so as to avail
himself of the landlord's lien.

We are unable to distinguish the *Jones* case from the case
at bar, as the attornment so unequivocally approved, in the
former case, was in the latter case made when there were no
conflicting liens, and all subsequent lienees are charged with
knowledge of the mortgagee's right of entry.

This view of the case renders it unnecessary for us to con-
sider when and under what circumstances a mortgagor can
abandon or release his equity of redemption.   It should be
borne in mind that this opinion does not deal with any
question of *actual* fraud, or fraud in fact, as the case comes
to us on a bare question of law.   No error appearing in the
record, the judgment is affirmed.

Affirmed.

CLARK, J., dissenting.   The Ballard Company intervenor
did not claim to be mortgagee in possession, which would
have been an open and notorious fact, but rested the case
upon its being landlord by virtue of an oral surrender of the
equity of redemption by the mortgagor, and that is found as

121—10

a fact by the jury. It was admitted by both parties that upon that fact the case depended. In *Killebrew* v. *Hines*, 104 N. C., 182, it was held that the lien of a creditor who makes advances to the mortgagor to make a crop is superior to that of the mortgagee of the land, because till the entry of the mortgagee the latter is assenting to the mortgagor's holding himself out as owner of the crop. In *Taylor* v. *Taylor* 112 N. C., 27, it was held that while a vendee, or mortgagor in default, remains in possession of land, the title to the crop is not vested in the mortgagee, or vendor, as landlord. *Crinkley* v. *Egerton*, 113 N. C., 444, cites with approval both these cases as applicable where the relation is *simply* that of vendor and vendee, mortgagor and mortgagee, and holds that in such cases there is no landlord's lien for rent, but held further in favor of the freedom of contracting that, when there is no oppression, it is competent for the parties to a mortgage for the purchase money to stipulate that, in addition to the mortgage on the purchased land, the vendor should have a lien on the crop to the extent of the rent, the same to be applied on the purchase money and that when such mortgage is recorded one who advanced supplies upon a later mortgage on the crop took subject to vendor's mortgage on the rent. In *Jones* v. *Jones*, 117 N. C., 254, it was held, approving *Taylor* v. *Taylor, supra,* and *Crinkley* v. *Egerton, supra,* that the vendee of land in default may by contract, in the absence of oppression, agree verbally that the vendor may have as additional security the landlord's lien for rent, the amount of same to go upon the purchase money.

There is this difference between *Crinkley* v. *Egerton* and *Jones* v. *Jones*, that in the first named case the agreement to give the mortgagee the rights of a landlord over the rent, was embraced in the mortgage which was registered and hence the person subsequently taking a mortgage upon the crop for advances was fixed with notice of it and hence the

mortgagor's right to the rent as against such third party was sustained.

In *Jones* v. *Jones*, however, the agreement to give the vendor the benefit of the landlord's lien upon the rent as additional security was verbal, and it was sustained as between the parties merely.

In the present case there was a similar verbal agreement. This was good as between the parties, as was held in *Jones* v. *Jones*, *supra*, but it can not be good as to third parties as in *Crinkley* v. *Egerton*, because unlike that case the agreement was not in writing and recorded and third parties had no notice from any registration. Nor is there any evidence tending to show that the merchant who advanced the supplies had any actual notice, if indeed under Connor's Act his registered mortgage for supplies could be defeated by a verbal conveyance back of the land from the vendee to the assignee of the vendor who had been secured by a mortgage upon the land only, more especially as the mortgagor, notwithstanding the verbal reconveyance, remained in possession.

If the merchant making advances in *Killebrew* v. *Hines* had examined the books in the Register's office he would have found that his customer had executed a mortgage on his land only and therefore could give him a valid mortgage on the crop. If such merchant had examined the records in *Crinkley's* case he would have found that his customer had not only mortgaged his land but had conveyed a lien on the rent also as additional security, so that he could only get a valid lien for his advances on the crop over and above the rent. If the merchant making advances in the present case examined, as we must presume he did, the Register's books, he would have found that, as in *Killebrew* v. *Hines*, the party in possession had given a mortgage only on the land (and not as in *Crinkley's* case conveyed the rent also) and therefore he is entitled to the

crop as it was mortgaged to him and can not be defeated by a parol agreement which, being unregistered and unknown to him, was only good between the parties as in *Jones* v. *Jones, supra.* Even in *Crinkley's* case the merchant had his lien on all the crop except the rent. Here, it is sought by a verbal agreement between mortgagor and mortgagee to defeat the merchant's lien for advances not only as to the rent but as to the whole crop.

The wise object of the Act of 1885 (known as Connor's Act) was to require all conveyances and encumbrances upon land to be spread upon the Record so that third parties could always be protected. Looking at the record here, the merchant was justified in taking from the mortgagor of the land in possession a mortgage upon his crop. To permit an unknown verbal agreement for the conveyance of land to the mortgagee, by way of a verbal surrender of the equity of redemption, to destroy the mortgage on the crop which was given the merchant by the party in possession claiming to be owner (subject only to the mortgage on the land) would be contrary to the letter and the spirit of the Act of 1895, (*Barbee* v. *Wadsworth,* 115 N. C., 29) and would unsettle the confidence of all who make advances to mortgagors and vendees in possession to enable them to raise their crops.

MONTGOMERY, J.: I concur in the dissenting opinion.