J. W. WARRINGTON v. N. W. HARDISON AND L. V. HARDISON.

(Filed 7 March, 1923.)

**1. Mortgagor and Mortgagee — Landlord and Tenant — Crops—Liens—Priorities—Deeds and Conveyances—Registration.**

The principle upon which the mortgagee by parol agreement may become the landlord and the mortgagor his tenant of the mortgaged land after the mortgagor's default, cannot give the landlord before default a lien for supplies, etc., superior to the lien of a chattel mortgage upon the crops raised, when the mortgagee has received and registered his mortgage while the mortgagor was in possession of the premises and before the default occurred or the parol agreement had been made.

**2. Pleadings — Amendments—Discretion of Court—Mortgages—Liens—Statutes.**

In an action by the mortgagee to recover the value of a crop, subject to the lien of his chattel mortgage against the defendant, who is alleged to have received it to his own use, it is discretionary with the trial judge to allow the plaintiff to amend his complaint, either before or after verdict, so as to increase the amount of his demand in conformity with the facts he has proved upon the trial. C. S., 547.

APPEAL by defendants from *Calvert, J.,* at November Term, 1922, of PAMLICO.

This action was to recover the sum of $200 on account of defendants having received for their own use from one Shaw Blount three bales of cotton on which plaintiff held a chattel mortgage.

On 6 February, 1919, Shaw Blount executed to N. W. Hardison a mortgage on the real estate of said Blount, and on 19 November, 1919, said Blount executed to plaintiff a chattel mortgage which was duly recorded, covering the crops to be raised during the year 1920 on the same land covered by the mortgage on the realty. About 1 February, 1920, Hardison, as mortgagee, took possession of the property under the power in his mortgage and under an oral agreement Shaw Blount, the mortgagor, became his tenant for the year 1920. Hardison thereafter furnished some supplies to run the farm that year, and demanded the crop in the fall which was turned over to him. The mortgage deed on the realty had fallen due 1 November, 1919. Verdict and judgment in favor of the plaintiff. Appeal by defendants.

*J. V. Rawls for plaintiff.*
*F. C. Brinson for defendants.*

CLARK, C. J. The court charged the jury that "the existence of the real estate mortgage given by Blount to the defendant Hardison would not constitute the relation of landlord as between them, or, if the jury

should find the facts to be as testified by them that would not constitute the relation of landlord and tenant between Hardison and Blount." The court also charged the jury: "The plaintiff contends that in this case there was a registered chattel mortgage on these three bales of cotton purchased by the defendant Hardison from Shaw Blount; that the evidence tends to show that there was a chattel mortgage given by Shaw Blount on the cotton to be raised on the land in question which was executed on 19 November, 1919, and duly registered, and that the three bales of cotton purchased by Hardison from Shaw Blount were raised on that land and covered by that chattel mortgage. The plaintiff further contends that there were three bales of cotton, that the mortgage value was about 13 cents a pound, which would make the bales worth about $225, which was the price paid for cotton at that time, and was the market value. Now, if you find the facts to be so from this evidence you will answer the issue $225."

The mortgage on real estate, executed February, 1919, to Hardison by Blount, fell due on 1 November, 1919. The plaintiff took the chattel mortgage 19 November, 1919, after maturity of the said mortgage deed. It was held in *Crinkley v. Egerton,* 113 N. C., 444, and approved in other cases since: "After default in the condition of a registered mortgage, the mortgagee can, by parole contract, become landlord of the mortgagor so as to avail himself of the landlord's lien on the crops. *Subsequent* lienors are charged with knowledge of the mortgagee's right of entry."

But in *Crinkley v. Egerton, supra,* and in the cases approving it, it was contracted for in the mortgage, as registered, that the mortgagee was entitled, as additional security, to the landlord's lien on the rents. In *Jones v. Jones,* 117 N. C., 254, and cases cited thereto in the Anno. Ed., it was held that an oral agreement by which the mortgagor became the tenant of the mortgagee was valid as between the parties thereto. Neither of these cases are authority in the present instance, where the owner of the land, though mortgagor, executed a chattel lien for advances, reciting that he was owner and in possession of the land on which the crop was to be raised, and, subsequent to the registration of such chattel mortgage, by an oral agreement, the mortgagor became tenant to the mortgagee as landlord, for no title to realty can pass by an oral agreement as to rights accrued under a prior registered chattel mortgage.

It is true that in *Ford v. Green,* 121 N. C., 70 (in which two members of the Court dissented), it was held that when the mortgagor had surrendered possession to the mortgagee, who by oral agreement became landlord to the mortgagor, the landlord's lien had priority over the

chattel mortgage, but in that case Green, the mortgagor, had surrendered possession to the mortgagee, who thus became landlord some four years or more before the holder of the chattel mortgage acquired his lien on the crop, and the mortgagee had been in actual possession as landlord several years prior to the execution of the chattel mortgage; while in the present case the chattel mortgage was given and recorded on 19 November, 1919, when the mortgagor was still in possession, and the holder of the chattel mortgage has advanced $666.64 under the chattel lien, which specified that the crops were to be raised by Blount (at that time the owner of the land) "on his own land, which was in his own possession," and the oral agreement by which in this case the mortgagor became the tenant and the mortgagee landlord was made some two months subsequent to the execution and registration of the chattel mortgage. The oral agreement between the mortgagor and the mortgagee did not convey the legal title as to the plaintiff, who had a prior registered chattel mortgage and made the advances on the faith thereof. C. S., 2480.

The holder of a chattel mortgage, duly registered, on these facts, has priority under the terms of the Connor Act, C. S., 3309, which provides: "No conveyance of land is valid as against creditors or purchasers for a valuable consideration from the donor, bargainor, or lessor, but from registration thereof"; and, of course, such chattel mortgage is superior to the subsequent oral agreement by which the mortgagee became landlord and the mortgagor tenant. Whatever force this agreement had as between the parties could not avail against the registered chattel mortgage by one who was owner and in possession at the time it was executed and which specified that the crops were to be raised by Blount "on his own land, which was in his own possession," and the crops were in fact raised by Blount on the land thus described.

The exact point was passed upon in *Killebrew v. Hines,* 104 N. C., 182, where it was held that the lien of a creditor who makes advances to the mortgagor to make a crop is superior to that of the mortgagee of the land because until the entry of the mortgagee he is assenting to the mortgagor holding himself out as owner of the crop. In that case it was held that where the mortgagor had been permitted to retain possession of the land, the mortgagee could not by entry defeat the claim of a mortgagor who has made advances and acquired an agricultural lien. Of course the agreement between mortgagor and mortgagee subsequent to the execution of the lien could not divest it. The plaintiff's lien, although executed 19 November, 1919, was executed while the mortgagor was in possession and though for the subsequent year was valid under C. S., 2480. The charge of the judge was correct.

The complaint was for the sum of $200, but the court in its discretion had the right to amend the demand increasing it from $200 to $225, "either before or after judgment," and of course before or after verdict "when the amendment does not change substantially the claim or defense by conforming the pleadings or proceeding to the fact proved." C. S., 547.

No error.